UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                        CRIMINAL ACTION NO. 3:21-CR-130-KHJ-ASH

RUDOLPH M. WARNOCK, JR., et al.


ORDER

Before the Court are the Government's five [106, 107, 108, 109, 178] Motions

in Limine and Defendant Cleveland Anderson's [135] Motion in Limine. For the

reasons stated below, the Court has reconsidered and clarified the in limine rulings

made at the April 7, 2025, pretrial conference. This Order supersedes all previous in

limine rulings.

I.      Background

On December 8, 2021, a federal grand jury indicted Rudolph M. Warnock, Jr.,

Cleveland Anderson, Andrew Grant, and Eric Gilkey for participating in an alleged

public corruption scheme in Canton, Mississippi. Indictment [3]. According to the

[3] Indictment, Warnock—a private businessman—bribed Anderson, Grant, and

Gilkey—Canton public officials—to award him city contracts throughout 2016 and

2017. *See id.* at 1–8. Anderson served on the Canton Municipal Utilities (CMU)

Board of Commissioners, and Grant and Gilkey served on the Canton Board of

Aldermen (BOA). *Id.* at 1.

The grand jury charged Warnock, Grant, and Gilkey with (1) conspiracy to commit federal program bribery (Count One), 18 U.S.C. §§ 371, 666; (2) conspiracy to violate the Travel Act (Count Two), *id.* §§ 371, 1952; (3) conspiracy to commit honest-services wire fraud (Count Three), *id.* §§ 1343, 1346, 1349; and (4) honest-services wire fraud (Count Four), *id.* §§ 1343, 1346. [3] at 2–8. It charged Anderson with only Counts One and Two. *Id.* at 2–6.

In November 2022, Grant and Gilkey each pleaded guilty to Count One. *See* Grant Plea Agreement [26]; Gilkey Plea Agreement [28]. Around March 2023, Anderson entered a [187] Plea Agreement with the Government. Anderson Plea Hr'g Tr. [157] at 57–58, Mar. 16, 2023. For six months, Anderson repeatedly attempted to plead guilty to Count One of the [3] Indictment across three lengthy plea hearings. *See* [157]; Anderson Plea Hr'g Tr. [158], June 12, 2023; Anderson Plea Hr'g Tr. [156], Sep. 13, 2023. At the end of the third plea hearing in September 2023, the Court refused Anderson's guilty plea. [156] at 61–62.

Anticipating Warnock and Anderson's trial, the parties filed various motions in limine. *See* Status Conf. Tr. [177] at 4. On April 7, 2025, the Court held a pretrial conference in which it heard argument on these motions and made preliminary rulings. *See* Pretrial Conf. Tr. [172]. After the pretrial conference, the judge then presiding over this case recused on May 28, 2025. Order of Recusal [168]. The undersigned was assigned on June 2, 2025. Order Reassigning Case [169]. The Court has since scheduled Warnock and Anderson's trial to begin on July 7, 2025. [177] at 26.

II.    Standard

A motion in limine asks a trial court to decide the admissibility of certain evidence before a party offers it at trial. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984). Courts may exclude, preadmit, or determine the admissibility of evidence in limine. *Bond Pharmacy, Inc. v. AnazaoHealth Corp.*, No. 3:11-CV-58, 2012 WL 3052902, at *2 (S.D. Miss. July 25, 2012) (collecting authorities). And they may use in limine rulings to preempt improper arguments. *See, e.g.*, *United States v. Plato*, 593 F. App'x 364, 372–74 (5th Cir. 2015) (per curiam). All the same, parties typically file motions in limine before trial to prevent opposing counsel from mentioning or alluding to highly prejudicial evidence at trial. *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1306 n.1 (5th Cir. 1977). Thus, a court "must weigh the evidence's contribution to the case against any potential prejudice or confusion." *Gibson, Inc. v. Armadillo Distrib. Enters., Inc.*, 107 F.4th 441, 447 (5th Cir. 2024) (citation modified).

"Evidence should not be excluded in limine unless it is clearly inadmissible on all potential grounds." *EEOC v. First Metro. Fin. Serv., Inc.*, 515 F. Supp. 3d 573, 575 (N.D. Miss. 2021) (citation modified); *accord Hawthorne Partners v. AT & T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) (citing *Luce*, 469 U.S. at 41 n.4). But "[m]otions in limine are frequently made in the abstract and in anticipation of some hypothetical circumstance that may not develop at trial." *Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980), *superseded on other grounds by rule*, Fed. R. Evid. 103(b), *as recognized in*, *Mathis v. Exxon Corp.*, 302

F.3d 448, 459 n.16 (5th Cir. 2002). So "evidentiary rulings should often be deferred until trial so that questions of foundation, relevancy and potential prejudice can be resolved in proper context." *First Metro.*, 515 F. Supp. 3d at 575 (citation modified); *accord Hawthorne Partners*, 831 F. Supp. at 1400.

In limine rulings do not bind a trial court. *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000). So "even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling." *Luce*, 469 U.S. at 41–42 (citation modified). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted [or excluded] at trial." *Hawthorne Partners*, 831 F. Supp. at 1401 (citation modified). And "an order granting a motion in limine does not preclude the [opposing] party . . . from revisiting the issue at trial. But that party must raise the issue outside the jury's presence." *Parker v. Tyson Foods, Inc.*, 499 F. Supp. 3d 297, 299 (S.D. Miss. 2020) (citation modified); *see also Hemphill v. New York*, 595 U.S. 140, 155 (2022) ("If a court admits evidence before its misleading or unfairly prejudicial nature becomes apparent, it generally retains the authority to withdraw it, strike it, or issue a limiting instruction as appropriate.").

III.   Analysis

The Court first addresses the Government's five [106, 107, 108, 109, 178] Motions in Limine in order and then turns to Anderson's [135] Motion in Limine.

A.  Government's [106] Motion in Limine to Preclude Jury Nullification Arguments and Exclude Evidence of Prior Good Acts

The Court grants in part and denies in part the Government's [106] Motion.

1.  Jury Nullification Arguments

To begin, the Government asks the Court to exclude as irrelevant any evidence or argument that "(1) other public officials and businesspeople have engaged in [taking or soliciting bribes], (2) [Warnock and Anderson's] conduct was consistent with how business was typically done in Canton, and (3) the potential punishments [Warnock and Anderson] could face should be taken into consideration." [106] at 2. The Court grants this part of the [106] Motion.

First, the Government contends that "the defendants do not have a right to argue that they should be acquitted because exchanging gifts and cash for official acts was done regularly in Canton or elsewhere." *Id.* at 3. In response, Warnock objects because he wishes to argue that he gave gifts rather than bribes. *See* [172] at 13. And Anderson objects that "he should be allowed to present evidence concerning how business was transacted in Canton" given the charges against him. Anderson's Resp. [118] at 2. As the Court understands it, the Government's [106] Motion does not target Warnock or Anderson's concerns. Rather, it seeks to exclude evidence that third parties in Canton took bribes, as well as the attendant argument that—if Warnock and Anderson did the same—they merely partook in a widespread practice. *See* [106] at 2–3.

"Evidence is relevant if[] (a) it has any tendency to make a fact more or less probable . . . and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. But "evidence about a third party's criminal [conduct]—absent any evidence connecting that person to an alleged conspiracy—is irrelevant to any issue

in the case . . . ." *United States v. Portillo*, 969 F.3d 144, 178 (5th Cir. 2020) (citation modified). So the Government may not use such evidence to prove guilt by association, *id.*, and the defense may not use it to minimize culpability. *Cf. id.*

As a result, Warnock may argue that he gave gratuities rather than bribes. *See Snyder v. United States*, 603 U.S. 1, 19–20 (2024). And Anderson may present relevant evidence on his role and activities as a CMU commissioner. But the parties may not introduce evidence that third parties in Canton gave or took bribes or that bribery was a normalized business practice in Canton. *See Portillo*, 969 F.3d at 178. That evidence would not make any fact at issue more or less probable. *See* Fed. R. Evid. 401.

Second, the Government moves to preclude the defense from making punishment-related arguments to the jury. [106] at 2–4. "Because a trial focuses only on the question of guilt, the jury is not allowed to consider a defendant's potential sentence as part of its deliberations." *United States v. Crittenden*, 46 F.4th 292, 298 n.8 (5th Cir. 2022) (en banc) (citation modified). Defense counsel stated that they knew not to make any punishment-related arguments to the jury. *See* [172] at 12, 15. So the Court grants this part of the Government's [106] Motion as unopposed.

### 2. Prior Good Acts

Next, the Government seeks to exclude "any evidence of [Warnock or Anderson's] prior good acts, such as charity work, public service, military service, or other actions that have benefited the community." [106] at 4. But Anderson wishes

to present evidence that he served in the military and worked as a school principal. [172] at 16–17, 19–20, 22–23. And Warnock wishes to mention his military service. *Id.* at 40. The Court denies this part of the Government's [106] Motion with respect to Anderson but grants it as to Warnock.

At trial, the Government intends to show that—even though Gilkey named Anderson as his campaign manager—Anderson "never actually served as a campaign manager." *Id.* at 30. In the Government's view, the position "was a front" for Anderson to receive bribe payments. *Id.* On the other hand, Anderson wants to rebut this narrative with character evidence: He contends that Gilkey selected him for the position because he "want[ed] somebody of . . . Anderson's stature to be associated with [his] campaign." *Id.* at 19. To that end, Anderson seeks to prove his stature and reputability through evidence of his military service and work as a school principal. *See id.* at 17–19.

Anderson may introduce character evidence to rebut the Government's theory, but he may not prove his good character through specific instances of conduct. *See* Fed. R. Evid. 404–405. Evidence of Anderson's respectability in the community makes it more probable that Gilkey selected Anderson as his campaign manager for a legitimate reason. *See id.* 401. Using character evidence this way does not offend Rule 404(a)(1), and Anderson may introduce evidence of his honesty and law-abidingness under Rule 404(a)(2)(A) regardless. *See, e.g.*, *United States v. Roland*, 130 F.4th 480, 490–91 (5th Cir. 2025); *see also United States v. De Leon*, 728 F.3d 500, 505 (5th Cir. 2013).

7

But Rule 405 generally limits admissible character evidence to reputation or opinion testimony. *See* Fed. R. Evid. 405. A party may only prove character through specific-act evidence when character "is an essential element of a charge, claim, or defense . . . ." *Id.* 405(b). Here, character is not an essential element of any offense charged in the [3] Indictment. *See United States v. Richard*, 775 F.3d 287, 294 (5th Cir. 2014) (conspiracy); *United States v. Simpson*, 741 F.3d 539, 547 (5th Cir. 2014) (conspiracy to commit wire fraud); *United States v. Radley*, 632 F.3d 177, 185 (5th Cir. 2011) (wire fraud). And it cannot be an essential element of any defense Anderson could raise here. *See United States v. Kahn*, 768 F. App'x 266, 270 (5th Cir. 2019) (per curiam) (citing *United States v. Marrero*, 904 F.2d 251, 259–60 (5th Cir. 1990)).[1] So Anderson may present only reputation or opinion testimony about his stature in the community. *See* Fed. R. Evid. 405(a).

Secondarily, Anderson also argues that his military and public service are relevant to showing that the Canton BOA chose him as a CMU commissioner "because of his qualifications" rather than "to just serve . . . at someone else's beck and call . . . ." [172] at 17. If the Government does not imply that the Canton BOA

---

[1] Prior good acts may not be admitted under Rule 405(b) to "circumstantially . . . prove lack of intent." *Marrero*, 904 F.2d at 260; *see also, e.g.*, *United States v. Doyle*, 130 F.3d 523, 542 (2d Cir. 1997). Yet, in rare circumstances, a defendant may introduce prior good acts under Rule 404(b)(2) to negate intent. *See, e.g.*, *United States v. Marlinga*, 457 F. Supp. 2d 769, 775 (E.D. Mich. 2006). Rule 405(b) bars defendants from using prior good acts to prove character when they seek to imply a lack of intent through good character. *See Marrero*, 904 F.2d at 260. But Rule 404(b)(2) permits defendants to introduce prior good acts when the acts themselves tend to negate intent or exculpate the defendant of the charged offense. *See, e.g.*, *Marlinga*, 457 F. Supp. 2d at 773, 775. Anderson's military and public service go only to his character and have no exculpatory purpose to justify admission under Rule 404(b)(2).

placed Anderson on the CMU Board to take bribes, then Anderson's qualifications

are irrelevant. But the Government may "open the door" if it suggests otherwise.

*See id.* at 42–43.[2] If the Government does so, then Anderson may introduce evidence

of his logistical and administrative experience in the military and education system.

*See United States v. Paquet*, 484 F.2d 208, 211 (5th Cir. 1973) ("The prosecution

cannot give its version of a matter and thereafter muzzle the defendant."). In that

context, Anderson's experience would not constitute character evidence. Rather, it

would rebut an inference that the Canton BOA appointed Anderson for his

bribability rather than his qualifications, which would make it less probable that

Anderson took bribes. *See* Fed. R. Evid. 401.

Since evidence of Anderson's qualifications is not "clearly inadmissible on all

potential grounds," the Court denies this part of the Government's [106] Motion.

*First Metro.*, 515 F. Supp. 3d at 575 (citation modified). Even so, Anderson may not

mention his military service, work as a school principal, or other specific instances

---

[2] Counsel may "open the door" to otherwise irrelevant evidence by eliciting evidence that "convey[s] an erroneous impression on the jury." *United States v. Age*, 136 F.4th 193, 222–23 (5th Cir. 2025) (citation modified). Doing so "open[s] the avenue for cross-interrogation for purposes of clarification." *Plato*, 593 F. App'x at 374 (quoting *United States v. Ruppel*, 666 F.2d 261, 269 (5th Cir. Unit A 1982)). So opening the door "expand[s] the realm of relevance" during trial, but "evidence cannot come through the open door if it is inadmissible even under the expanded realm of relevance opened by . . . the adversary." 21 *Wright & Miller's Federal Practice & Procedure* § 5039.1, Westlaw (2d ed. database updated May 2025). "Inadmissible evidence is permitted only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence." *United States v. Martinez*, 988 F.2d 685, 702 (7th Cir. 1993) (citation modified). And "[a]n 'open door' does not give an opponent unbridled license to introduce otherwise inadmissible evidence into the trial, nor does it justify receipt of rebuttal evidence merely because it is in the same category of excludable evidence as the evidence previously offered." *Id.*

of conduct to prove his character.[3] Only if the Government suggests that the Canton BOA placed Anderson on the CMU Board for corrupt reasons may Anderson then rebut that theory with evidence of his logistical and administrative experience.

### B. Government's [107] Motion in Limine to Exclude Evidence Regarding the Merits of the Co-Conspirators' Official Acts

The Government's next [107] Motion in Limine asks the Court to exclude all evidence and argument about the merits of (1) a "Five Point Plan" developed by Warnock to remedy sewage backups in Canton and (2) an emergency declaration made by the CMU Board authorizing Warnock to enact his plan. [107] at 1–2, 8; *see also* [172] at 43–45. The Court grants in part and denies in part the Government's [107] Motion.

In 2015 and 2016, sewage began backing up in homes around Canton. [107] at 3. Anderson proposed that the CMU Board authorize Warnock to develop a plan to fix the sewage problem. *Id.* After the CMU Board so approved, Warnock developed a "Five Point Plan," and Anderson voted for the plan. *Id.* With the plan approved, Anderson then proposed that the CMU Board declare a state of emergency to facilitate enacting Warnock's plan. *Id.*

---

[3] For the same reason, Warnock may not mention his military service; it makes no fact here more or less probable. *See* Fed. R. Evid. 401. *French v. United States*, 232 F.2d 736, 740–41 (5th Cir. 1956), is not to the contrary. There, the district court admitted evidence of the defendant's honorable discharge. *Id.* at 740. But the Fifth Circuit addressed—and approved of—only the exclusion of the defendant's military service record "because it was not permissible to show good character by evidence of particular and specific facts . . . ." *Id.* at 741. While the Fifth Circuit did not directly address the admission of the defendant's honorable discharge, the Court concludes that such evidence does not fit within Rule 405(a)'s strictures. *See* Fed. R. Evid. 405(a).

According to the Government, Anderson took these actions because of Warnock's bribery. *See id.* But the Government believes that Anderson may argue he would have proposed the emergency declaration and voted for the "Five Point Plan" regardless of allegedly receiving bribes. *Id.* at 2. To that end, the Government argues that the merits of the emergency declaration and "Five Point Plan" have no relevance to the issues here. [172] at 43–45.

As the Government correctly observes, preexisting intent to take a meritorious official action is not a defense to bribery. *See United States v. Nagin*, 810 F.3d 348, 351–52 (5th Cir. 2016). Thus, the Court excludes any argument that—assuming Anderson did take bribes—he would have performed the same official acts regardless. *See id.*

But to the extent that the Government seeks to exclude any evidence about the merits of the emergency declaration or "Five Point Plan," the Court denies that request. *See First Metro.*, 515 F. Supp. 3d at 575. At this time, the Court cannot assume that Anderson's theory of the case involves admitting to taking bribes. Under the Government's theory, Anderson proposed the emergency declaration and approved the "Five Point Plan" because Warnock bribed him. *See* [107] at 3–4. If Anderson denies taking bribes, the jury—having heard the Government's theory—may wonder why Anderson took his official acts if not for bribery. For this reason, Anderson may rebut the Government's theory by introducing evidence of legitimate reasons for his acts. Those reasons likely involve the merits of the official actions, so the Court will not preemptively strip Anderson of his ability to explain to the jury in

concrete terms why—if not for bribery—he took the actions he did. *See Old Chief v. United States*, 519 U.S. 172, 187–88 (1997).

### C. Government's [108] Motion in Limine to Exclude Inadmissible Evidence

The Court grants in part and denies in part the Government's [108] Motion.

#### 1. Grant's Conviction

The Government next seeks to exclude evidence of Grant's prior conviction for conspiracy to commit voter fraud under Rule 403. [108] at 2; *see also* Miss. Code Ann. §§ 23-15-753, 97-1-1. The Court denies this part of the Government's [108] Motion.

Subject to Rule 403, a party may attack a nondefendant witness's character for truthfulness with a criminal conviction "for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year . . . ." Fed. R. Evid. 609(a)(1). Under Rule 403, a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." *Id.* 403. But courts must admit as impeachment evidence a conviction for any crime whose elements require proof of a dishonest act or false statement. *Id.* 609(a)(2). "Crimes qualifying for admission under Rule 609(a)(2) are not subject to Rule 403 balancing and must be admitted." *United States v. Jefferson*, 623 F.3d 227, 233 (5th Cir. 2010) (citation modified).

According to the Government, Mississippi's voter fraud statute "can be violated without proof of dishonesty or falsehoods by, for example, paying somebody to vote for a particular candidate." [108] at 4 (citing § 23-15-753). The Court

disagrees. For one, the statute's title—"Vote *fraud*"—renders the Government's argument doubtful. § 23-15-753 (emphasis added). Fraud offenses, by their nature, involve dishonesty. *See, e.g.*, *United States v. Toney*, 615 F.2d 277, 279 (5th Cir. 1980). And the law has long considered voter fraud committed by paying for votes as bribery. *See Perrin v. United States*, 444 U.S. 37, 43 (1979); *see also United States v. Risner*, 737 F. App'x 751, 754 (6th Cir. 2018) (describing paying for votes as voter bribery). *Compare, e.g.*, § 23-15-753, *with* 52 U.S.C. § 10307(c), *and* 18 U.S.C. § 597, *and* 18 U.S.C. § 201(b). "Bribery is a *crimen falsi* in that it involves dishonesty." *Jefferson*, 623 F.3d at 234 (citation modified). So Rule 609(a)(2) covers voter bribery.

Still, Grant was convicted of *conspiracy* to commit voter fraud, so the question is whether that conspiracy involves a dishonest act. In Mississippi, criminal conspiracy does not require an overt act. *Lollis v. State*, 373 So. 3d 1004, 1007 (Miss. 2023); § 97-1-1. But that does not mean that Grant's conspiracy conviction did not involve dishonesty. *See United States v. Childs*, No. 2:22-CR-30, 2025 WL 1513205, at *5–7 (D.N.J. May 28, 2025); *United States v. Cuozzo*, 962 F.2d 945, 948 (9th Cir. 1992). Because voter bribery involves dishonesty, an agreement to commit voter bribery likewise involves dishonesty. *See Cuozzo*, 962 F.2d at 948; *see also Childs*, 2025 WL 1513205, at *6 (collecting cases). "By pleading guilty to conspiring to commit [voter] fraud, [Grant] admitted to conspiring to commit a *crimen falsi* crime." *Childs*, 2025 WL 1513205, at *7. So "the Court concludes that a conviction for conspiracy to commit [voter] fraud also 'demonstrates a propensity towards testimonial dishonesty.'" *Id.* (quoting *Cuozzo*, 962 F.2d at 948). Thus,

Grant's conviction for conspiracy to commit voter fraud must be admitted under 609(a)(2). *See Cuozzo*, 962 F.2d at 948; *Childs*, 2025 WL 1513205, at *7.

   2. Espy's Indictment

The Government also moves to exclude evidence of potential witness Alphonso Michael Espy's prior indictment and acquittal. *See* [108] at 5. Warnock and Anderson do not oppose this request. *See* [172] at 57–58. Thus, the Court grants this part of the Government's [108] Motion as unopposed.

   3. Opinion Testimony on Legality of Vote to Remove Anderson from CMU Board

The Government next moves to exclude opinion testimony about the legality of a vote to remove Anderson from the CMU Board. [108] at 8. According to the Government, such testimony is irrelevant and would constitute improper opinion testimony under Rule 701. *Id.* at 9–10. Anderson objects, arguing that this evidence shows he "was not acting in . . . any type of conspiracy and that, when he stood up, [Warnock, Gilkey, and Grant] took possibly illegal action to have him removed from the [CMU B]oard." [172] at 60; *see also* [108] at 8. The Court grants in part and denies in part this portion of the Government's [108] Motion.

Evidence that Warnock, Gilkey, and Grant tried to remove Anderson from the CMU Board could mean that "the corrupt relationship between . . . Warnock and . . . Anderson had soured," as the Government argues. [108] at 8. But conflict between Warnock, Gilkey, Grant, and Anderson could make it less probable that Anderson had involved himself in their conspiracy. *See* Fed. R. Evid. 401. If Warnock, Gilkey, and Grant rushed a vote to remove Anderson without a quorum,

that concrete fact would tend to make Anderson's narrative more believable—and more probable—to the jury. *See id.*; *Old Chief*, 519 U.S. at 187–88. Thus, evidence on the legality of the vote to remove Anderson is relevant.

With that said, the Government correctly argues that Anderson cannot offer lay opinion testimony on the legality of the vote. [108] at 9–10. Opining on whether a quorum existed would require a witness to construe the Canton city ordinances or policies governing the vote, and those ordinances lie outside the realm of rationally based perceptions. *See* Fed. R. Evid. 701(a); *United States v. El-Mezain*, 664 F.3d 467, 511 (5th Cir. 2011). Thus, the Court excludes lay opinion testimony on the matter.

Even so, the Court disagrees with the Government's assertion that only an attorney may offer opinion testimony on the vote's legality. *See* [172] at 62. Here, a nonlawyer with the requisite knowledge of the Canton BOA's policies and procedures could suffice. In case Anderson wishes to introduce expert testimony, the Court will extend the time for him to make any necessary Rule 16(b)(1)(C) disclosures. Fed. R. Crim. P. 16(b)(1)(C)(ii). The Court does not expect that this should prejudice the Government given the Court's prior ruling on this issue. *See* [172] at 62.

D. Government's [109] Motion in Limine to Admit "Other Acts" Evidence

The Government next asks the Court "to admit four instances of 'other acts' evidence, two against . . . Warnock and two against . . . Anderson." [109] at 2. Courts routinely consider documentary, photographic, or videographic exhibits for

preadmission into evidence before trial. *See, e.g.*, *United States v. Garcia-Perez*, 832 F. App'x 303, 306 (5th Cir. 2020) (per curiam). But the Government's [109] Motion merely describes what it assumes that several witnesses will say about Warnock and Anderson. [109] at 2–3. The Court cannot preadmit a witness's potential testimony. Doing so would imply that the jury could consider that testimony as part of the evidentiary record even if the witness never testifies. Instead, the Court considers only whether the Government's extrinsic-offense evidence is *admissible*. *See Bond Pharmacy*, 2012 WL 3052902, at *2. Accordingly, the Court grants in part and denies in part the Government's [109] Motion.

To be admissible under Rule 404(b)(2), extrinsic-offense evidence (1) "must be relevant to an issue other than the defendant's character," (2) must have probative value that is not "substantially outweighed by its undue prejudice," and (3) "must meet the other requirements of Rule 403." *United States v. Stuart*, 132 F.4th 892, 900 (5th Cir. 2025) (citation modified). At the first step, "an extrinsic offense's relevance is a function of its similarity to the offense charged." *Id.* (citation modified). "And the [G]overnment must demonstrate that the defendant committed the offense because it is relevant only if he in fact committed it." *Id.* (citation modified). At step two, courts balance these factors under Rule 403: "(1) the [G]overnment's need for the extrinsic evidence, (2) the similarity between the extrinsic [evidence] and charged offenses, (3) the amount of time separating the two offenses, and (4) the court's limiting instructions." *Id.* (citation modified). The "more closely an extrinsic offense resembles the charged offense, the greater the prejudice

to the defendant." *United States v. Meyer*, 63 F.4th 1024, 1041 (5th Cir. 2023) (citation modified).

    1.   Warnock's $1,000 Payment to Grant

First, the Government seeks to offer evidence that, in 2013, "Warnock provid[ed] Grant with $1,000" shortly before "telling Grant that he was interested in getting 'work' in the city of Canton . . . ." [109] at 6; *see also id.* at 2–3. Warnock objects solely on the ground that the Government's [109] Motion does not provide sufficient notice to satisfy Rule 404(b)(3). [172] at 65; Warnock's Resp. [117] at 1. The Court rejects this argument as meritless on its face. The Government's 13-page [109] Motion separately lists each extrinsic offense at issue and states that the Government wishes to introduce each one to show at least motive and intent. [109] at 6–8, 10. Likewise, the [109] Motion explains why the Government believes that the extrinsic offenses prove these purposes. *Id.* at 6–11. This level of detail amply meets Rule 404(b)(3)'s requirements.

As for the first extrinsic offense, the Court finds it admissible. First, Warnock's payment is relevant to his intent. Warnock claims that he gave gratuities for past acts rather than bribes for future acts. *See* [172] at 13–14. Thus, evidence that Warnock paid money for Grant to forward future work to him bears on the intent behind the later payments at issue. Second, Rule 403 does not bar this evidence. Given Warnock's theory, the Government needs evidence that proves Warnock's intent. On the other hand, the similarity of this offense to bribery increases the prejudice to Warnock, and the offense's age, three years, slightly

weakens its probative value. Even so, the Court can craft a limiting instruction upon request, and the Court believes that this offense has high probative value regarding Warnock's intent. Thus, the Court determines that the risk of unfair prejudice does not substantially outweigh the offense's probative value. *See* Fed. R. Evid. 403; *Stuart*, 132 F.4th at 900.

2. Warnock's Provision of Lunches and Transportation to Grant's Campaign

The Court reaches the opposite conclusion about the second extrinsic offense. The Government wishes to introduce evidence that Grant asked Warnock in 2013 to "purchase lunches for Grant's poll workers and provide transportation for Grant's campaign to use to transport voters" and that "Warnock agreed and provided those things of value to Grant." [109] at 3. While this evidence could show Warnock's motive or intent to influence Grant, the Court finds that the probative value of this evidence on Warnock's motive or intent is so slight that the evidence cannot survive Rule 403 balancing. *See Stuart*, 132 F.4th at 900.

"Intending to make a campaign contribution does not constitute bribery, even though many contributors hope that the official will act favorably because of their contributions." *United States v. Tomblin*, 46 F.3d 1369, 1379 (5th Cir. 1995). So "accepting a campaign contribution does not equal taking a bribe unless the payment is made in exchange for an *explicit* promise to perform or not perform an official act." *Id.* (citation modified) (emphasis added). And the Government admits that "Warnock did not explicitly ask Grant for consideration in awarding

18

government work when he purchased lunches or transportation for Grant's campaign to use." [109] at 8.

The Government believes that this offense shows Warnock's intent to curry favor with public officials and purchase things at their request. *Id.* But "vague expectations of some future benefit should not be sufficient to make a payment a bribe." *Tomblin*, 46 F.3d at 1379 (citation modified). Since contributing to or helping an official's campaign has minimal probative value on motive or intent to corruptly influence, the Government has minimal need for this evidence. The Court excludes this extrinsic offense under Rule 403. *See* Fed. R. Evid. 403; *Stuart*, 132 F.4th at 900.

### 3. Anderson's Attempts to Have CMU Hire His Wife

Turning to the third extrinsic offense, the Government seeks to show that "Anderson made attempts to convince Grant, Gilkey, . . . Warnock, and others at CMU that CMU should hire . . . Anderson's wife and other family members." [109] at 3. Per the Government, "Anderson's attempt to enrich his family by using his position as a CMU Commissioner is indicative of his financial motivations to commit the charged bribery schemes." *Id.* at 8. Anderson objects, arguing that Rule 403 bars this evidence. Anderson's Resp. [121] at 3. The Court finds it admissible.

First, the Court agrees that this offense bears on Anderson's potential motive to use his position to accumulate more wealth for himself and his family. Second, this evidence survives Rule 403's balancing test. The Government needs this evidence to show that Anderson had reasons to engage in the alleged bribery

scheme. This offense has some similarity to the charged conduct here because bribery and nepotism both involve using an official position for private gain. But this offense is probative precisely because it shows that Anderson wanted to use his position for private gain. As for the last two Rule 403 factors, no time elapsed between this offense and the charged conduct, and the Court can fashion a limiting instruction upon request. Thus, the Court finds this evidence admissible. *See* Fed. R. Evid. 403; *Stuart*, 132 F.4th at 900.

     4.   Anderson's Offer to Have a Madison Public Official Killed for Warnock

     Moving to the fourth extrinsic offense, the Government wishes to show that, shortly after Warnock complained to Anderson about how a Madison public official had treated him, Anderson offered to arrange the official's murder. [109] at 3. According to the Government, this extrinsic offense shows that Anderson "was motivated to aid" Warnock and had the intent to use his power to support Warnock. *Id.* at 10. Warnock and Anderson object, arguing that this evidence is highly prejudicial and has minimal probative value on motive and intent. [172] at 75. The Court finds this evidence admissible.

     Under Anderson's theory, he aided Warnock out of fear that the Canton BOA would remove him from his position on the CMU Board. *See* Anderson Plea Hr'g Tr. [157] at 69–70, Mar. 16, 2023. So if Anderson offered to aid Warnock in such an extreme way (and when Warnock had not requested it), this motive to aid Warnock makes it more probable that Warnock had illicitly influenced Anderson. Since the extrinsic offense does indicate that Anderson was unusually eager to assist

Warnock, this offense is relevant to Anderson's motive and intent. *See* Fed. R. Evid. 401.

Admissibility under Rule 403 presents a closer call. The Government has other evidence that Anderson had a motive to engage in the alleged bribery scheme. *See supra* Section III.D.3. But this extrinsic offense differs from the charged conduct; the offense occurred during the alleged bribery scheme; and the Court can craft a limiting instruction. The Court acknowledges that admitting evidence that Anderson offered to arrange a contract killing could unfairly prejudice him with respect to the charged conduct. But it also notes that this evidence has significant probative value. It is particularly convincing evidence that Anderson was highly motivated to assist Warnock in an illicit manner, and this lends itself to a strong inference that Warnock had heavily influenced Anderson. Though the Rule 403 balancing test presents a close call, the Court cannot say that the risk of unfair prejudice *substantially* outweighs the evidence's significant probative value. *See* Fed. R. Evid. 403; *Stuart*, 132 F.4th at 900.

E.  Government's [178] Motion in Limine to Preclude Selective Prosecution Argument or Evidence Before the Jury

The Government lastly moves to exclude "evidence, testimony, or argument in support of a selective prosecution defense . . . ." [178] at 1. Warnock and Anderson did not respond in opposition. *See* 06/17/2025 Text Only Order. Thus, the Court grants the Government's [178] Motion as unopposed. *See* L.U. Crim. R. 47(C)(1).

F.  Anderson's [135] Motion in Limine to Limit Evidence to Periods Covered in Indictment

In his [135] Motion, Anderson asks the Court to limit the Government's evidence to the date range specified in the [3] Indictment: January 1, 2016, to December 31, 2017. [135] at 1–2. According to Anderson, admitting evidence from outside that range "would be highly prejudicial . . . but . . . would have no probative value." *Id.* at 2. The Court denies the [135] Motion.

First, the Court has already ruled on the prospective admissibility of evidence beyond the [3] Indictment's timeframe. *See supra* Section III.D.1. Second, as the Government points out, "[e]vidence of behavior antedating the period covered by the indictment is generally admissible as bearing on the existence and purpose of [a] conspiracy and the significance of later behavior." *United States v. Crockett*, 514 F.2d 64, 72 (5th Cir. 1975). And third, Anderson's [135] Motion lists no specific evidence that he objects to and contains no reasoning why any evidence beyond the [3] Indictment's timeframe "would be highly prejudicial . . . but . . . would have no probative value." [135] at 2. At trial, the Government may attempt to introduce evidence of relevant facts beyond the [3] Indictment's timeframe, and the Court will entertain Anderson's objections to specific evidence as the Government attempts to introduce it. *See Parker*, 499 F. Supp. 3d at 299.

IV.    Conclusion

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART the Government's [106, 107, 108, 109, 178] and Anderson's [135] Motions in Limine. The Court also extends the time for Anderson to make any necessary Rule

16(b)(1)(C) disclosures until June 30, 2025. In doing so, the Court has considered all the parties' arguments. Those arguments not addressed would not have altered the Court's decision. The parties must inform all their witnesses of the Court's in limine rulings to avoid violating the Court's Order.

SO ORDERED, this 25th day of June, 2025.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE