UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                      CRIMINAL ACTION NO. 3:21-CR-130-KHJ-ASH

RUDOLPH M. WARNOCK, JR., et al.

ORDER

Before the Court are Defendant Rudolph M. Warnock, Jr.'s [174] Motion to Dismiss and Defendant Cleveland Anderson's [180] Motion to Dismiss. For the reasons stated below, the Court denies the motions.

I. Background

On December 8, 2021, a federal grand jury indicted Rudolph M. Warnock, Jr., Cleveland Anderson, Andrew Grant, and Eric Gilkey for participating in an alleged public corruption scheme in Canton, Mississippi. Indictment [3]. According to the [3] Indictment, Warnock—a private businessman—bribed Anderson, Grant, and Gilkey—Canton public officials—to award him city contracts throughout 2016 and 2017. *See id.* at 1–8. Anderson served on the Canton Municipal Utilities (CMU) Board of Commissioners, and Grant and Gilkey served on the Canton Board of Aldermen (BOA). *Id.* at 1.

The grand jury charged Warnock, Grant, and Gilkey with (1) conspiracy to commit federal program bribery (Count One), 18 U.S.C. §§ 371, 666; (2) conspiracy to violate the Travel Act (Count Two), *id.* §§ 371, 1952; (3) conspiracy to commit

honest-services wire fraud (Count Three), *id.* §§ 1343, 1346, 1349; and (4) honest-services wire fraud (Count Four), *id.* §§ 1343, 1346. [3] at 2–8. It charged Anderson with only Counts One and Two. *Id.* at 2–6.

In November 2022, Grant and Gilkey each pleaded guilty to Count One. *See* Grant Plea Agreement [26]; Gilkey Plea Agreement [28]. The judge originally presiding over this case then recused on May 28, 2025. Order of Recusal [168]. And the undersigned was assigned on June 2, 2025. Order Reassigning Case [169]. The Court has since scheduled Warnock and Anderson's trial to begin on July 7, 2025. Status Conf. Tr. [177] at 26.

With trial approaching, Warnock and Anderson now move to dismiss Count One of the [3] Indictment for failure to state an offense. [174] at 4, 6–8; [180] at 5–6. They argue that Anderson was not an agent of Canton, so they could not have conspired to violate Section 666, which applies to agents of local governments that receive over $10,000 of federal grant money in a year. [174] at 4, 6; [180] at 6. And Warnock argues that the [3] Indictment alleges an agreement to bribe Grant and Gilkey regarding only CMU's business rather than Canton's business, so the alleged agreement would not have violated Section 666. [174] at 6–8.

II.   Standard

A criminal defendant may move to dismiss an indictment for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). Doing so challenges the sufficiency of the indictment. *United States v. Masha*, 990 F.3d 436, 443 (5th Cir. 2021). "When addressing whether an indictment fails to state an offense, the court is required to

2

take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. De Bruhl*, 118 F.4th 735, 745 (5th Cir. 2024) (citation modified).

"The validity of an indictment is governed by practical, not technical considerations, and the basic purpose behind an indictment is to inform a defendant of the charge against him." *United States v. Rafoi*, 60 F.4th 982, 993 (5th Cir. 2023) (citation modified). So "an indictment is legally sufficient if (1) each count contains the essential elements of the offense charged, (2) the elements are described with particularity, and (3) the charge is specific enough to protect the defendant against a subsequent prosecution for the same offense." *Id.* (citation modified). The first prong of this analysis requires the indictment to "*allege* that the defendant committed each of the essential elements of the crime charged; it is not sufficient to merely *state* the elements of the crime." *United States v. Suarez*, 966 F.3d 376, 382–83 (5th Cir. 2020) (citation modified). But "in an indictment for conspiring to commit an offense—in which the conspiracy is the gist of the crime—it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy." *Rafoi*, 60 F.4th at 993 n.4 (citation modified).

III.  Analysis

Warnock contends that Count One of the [3] Indictment fails to state an offense because it did not allege that (1) Anderson was an agent of Canton or that (2) Grant and Gilkey received anything of value in connection with Canton's

3

business. [174] at 4, 6–8; Warnock's Reply [191] at 3–8. Anderson adopts the same argument about himself: that he was not an agent of Canton. [180] at 6; Anderson's Reply [192] at 2–5. The Government counterargues that Anderson was an agent of Canton because he worked for CMU, an agency of Canton. Gov't's Resp. [183] at 3–6. It also presses that Grant and Gilkey took bribes to perform acts related to their positions on the Canton BOA, *id.* at 6–7, and that in any event, Anderson, Grant, or Gilkey's agent status is irrelevant because Count One charges only conspiracy to commit federal program bribery. *Id.* at 7–9.

The Court finds that the [3] Indictment alleges Anderson was an agent of Canton and that Grant and Gilkey took bribes in connection with Canton's business. So it denies Warnock's [174] and Anderson's [180] Motions to Dismiss.

A.  Relevance of Agent Status to Conspiracy Charged in Count One

First, the Court considers the Government's position that Anderson, Grant, or Gilkey's agent status is irrelevant to the conspiracy charge in Count One. [183] at 7–9. The Court disagrees. To prove conspiracy under Section 371, the Government must show "(1) an agreement between two or more persons to pursue an unlawful objective; (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy; and (3) an overt act by one or more of the members of the conspiracy in furtherance of the [conspiracy's] objective . . . ." *United States v. Delgado*, 984 F.3d 435, 450 (5th Cir. 2021) (citation modified). The first element—the agreement—requires "a joint commitment to an endeavor which, if completed, would satisfy all of the elements of the underlying substantive

4

criminal offense." *Ocasio v. United States*, 578 U.S. 282, 287 (2016) (citation modified). Anderson, Grant, and Gilkey's agent status bears directly on whether an agreement to bribe them would have constituted conspiracy to commit federal program bribery.

Section 666 applies only to "an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof" that receives over $10,000 of federal grant money in a year. § 666(a)(1); *United States v. Moeller*, 987 F.2d 1134, 1137 & n.9 (5th Cir. 1993). So bribing Anderson, Grant, or Gilkey would have violated Section 666 only if they were agents under the statute. *See* § 666(a)(1). And since the [3] Indictment alleges an agreement to bribe those three, [3] at 2–4, the alleged agreement meets the first element of conspiracy only if bribing them would have violated Section 666. *See Ocasio*, 578 U.S. at 287.

B. Anderson's Agent Status

According to Warnock and Anderson, Count One alleges Anderson was an agent of CMU rather than Canton. [174] at 4, 6; [180] at 6. On the other hand, the Government claims it is undisputed "that CMU was an agency of the City of Canton." [183] at 4. And because CMU is an agency of Canton, Anderson acted as an agent of Canton by performing his functions for CMU. *Id.* While Warnock and Anderson do argue that CMU is not an agency of Canton, the Court disagrees and finds that the [3] Indictment alleges Anderson acted as an agent of Canton while working as a CMU commissioner.

Under Section 666, an "agent" is "a person authorized to act on behalf of another person or a government and, in the case of an organization or government, includes a servant or employee, and a partner, director, officer, manager, and representative." § 666(d)(1). To qualify as an agent in this Circuit, an individual must also be "authorized to act on behalf of the entity receiving federal monies with respect to its funds." United States v. Thomas, 847 F.3d 193, 198 (5th Cir. 2017) (per curiam) (alteration incorporated) (quoting United States v. Phillips, 219 F.3d 404, 411 (5th Cir. 2000)). So an agent must "have general authority [1] to act for the organization and [2] to control its funds." United States v. Shoemaker, 746 F.3d 614, 622 (5th Cir. 2014). Moreover, the statute defines a "government agency" as "a subdivision of the executive, legislative, judicial, or other branch of government, including a department, independent establishment, commission, administration, authority, board, and bureau, and a corporation or other legal entity established, and subject to control, by a government or governments for the execution of a governmental or intergovernmental program." § 666(d)(2).

The central question is whether the [3] Indictment alleges that Anderson acted as an agent of Canton as he performed his functions for CMU. Moeller, 987 F.2d at 1137. It does. The [3] Indictment alleges that Anderson was an agent of CMU, which is an agency of Canton, so it sufficiently alleges he was also an agent of Canton. See United States v. Marmolejo, 89 F.3d 1185, 1194 n.11 (5th Cir. 1996), aff'd sub nom., Salinas v. United States, 522 U.S. 52 (1997); see also Moeller, 987 F.2d at 1137–38. To begin with, CMU fits Section 666's definition of a government

6

agency. *See* § 666(d)(2). First, Canton is a local government. *City of Canton v. Canton Cotton Warehouse Co.*, 36 So. 266, 266 (Miss. 1904). Second, Canton established CMU to execute a governmental program: the management of the city's utility systems. *See* Miss. Code Ann. § 21-27-13. And third, Canton exercises control over CMU. [3] at 1.

Since the [3] Indictment alleges that Canton exercises control over CMU, the Court could stop there. *See De Bruhl*, 118 F.4th at 745. But Mississippi law also shows that Canton's governing authorities may (1) elect and remove CMU commissioners, (2) abolish CMU, and (3) direct CMU on how to disburse its surplus funds. §§ 21-27-13, -15, -19. And if a municipality chooses not to establish a municipally owned utility, the power to control a municipality's utility systems rests with the municipality's governing authorities. *Id.* § 21-27-13. So when a municipality establishes a municipally owned utility, it vests the utility with its own power to operate its utility systems. *See id.* Because CMU was established by Canton, exercises authority delegated from Canton, and remains subject to Canton's control, *see id.* §§ 21-27-13, -15, -19, CMU is an agency of Canton.

As a CMU commissioner, Anderson had authority to act on behalf of Canton with respect to its funds. *See Thomas*, 847 F.3d at 198; § 666(a)(1). Anderson's role involved wielding authority delegated from Canton to CMU. *See* § 21-27-13. This authority included the power to award city contracts to businesses. [3] at 1. And Canton disbursed funds to CMU. *Id.* at 2. So Anderson's power to help decide who would receive city contracts meant that he had authorization to spend Canton's

7

money. Because Anderson acted on behalf of Canton in managing its utilities and had the power to spend city money, he meets the definition of an agent under Section 666. *See Moeller*, 987 F.2d at 1137–38; *Thomas*, 847 F.3d at 198; *see also Marmolejo*, 89 F.3d at 1194 n.11.

Anderson resists this conclusion by arguing that he could not bind Canton because CMU is a separate entity from Canton. [192] at 2–5. For support, he cites a Tennessee case, which held that a municipally owned utility in that state was not an agency of its municipality. *Id.* at 3–4 (quoting *City of Cowan v. City of Winchester*, 121 F. Supp. 3d 795, 801–02 (E.D. Tenn. 2015). And he also points to Mississippi case law for the proposition that CMU is "a separate entity" from Canton. *Id.* at 5 (quoting *Barnes ex rel. Herring v. City of Canton*, 207 So. 3d 1272, 1275 (Miss. Ct. App. 2016).

To start, Anderson's citation to *City of Cowan* is unpersuasive. *See* [192] at 3–4. While municipalities and their utilities may have a more distant relationship in Tennessee, the Mississippi Supreme Court has referred to a municipally owned utility as "an arm of the [c]ity" that created it. *Putt v. City of Corinth*, 579 So. 2d 534, 535 (Miss. 1991); *see also Kelley, LLC v. Corinth Pub. Utilities Comm'n*, 200 So. 3d 1107, 1113–14 (Miss. Ct. App. 2016) (en banc); *Hathorn v. Louisville Utilities Comm'n*, 233 So. 3d 273, 277–79 (Miss. 2017) (en banc). In *Putt*, the court proceeded on "the premise that authorized actions taken by officials and agents of the [Public Utilities] Commission and the [Gas and Water] Department [we]re in law taken as well on behalf of the [c]ity . . . ." 579 So. 2d at 535 n.1. And the court denied

summary judgment to the city after a private citizen sued the city on a contract made by its municipally owned utility. *Id.* at 536, 539. This implies that the city's utilities commission had the authority to bind the city itself. *See id.*

As for Anderson's citation to *Barnes*, it similarly falls flat. *See* [192] at 4–5. *Barnes* concerned whether a municipal visitor's bureau was a separate entity from its municipality such that it could be sued in its own name under the Mississippi Tort Claims Act (MTCA). 207 So. 3d at 1274–75. Municipally owned utilities are separate legal entities in Mississippi. *Clarksdale Pub. Utilities Comm'n v. Miss. Dep't of Emp. Sec.*, 393 So. 3d 1048, 1053 (Miss. Ct. App. 2024) (en banc).

But a separate legal entity (i.e., one amenable to suit under the MTCA) can still operate as a city agency. *E.g., Jackson Mun. Airport Auth. v. State ex rel. Shivers*, 196 So. 2d 884, 884 (Miss. 1967); *Urb. Renewal Agency of Aberdeen v. Tackett*, 255 So. 2d 904, 905–06 (Miss. 1971); *see Bunton v. King*, 995 So. 2d 694, 695 (Miss. 2008) (en banc); *cf. Painter v. Tenn. Valley Auth.*, 476 F.2d 943, 944 (5th Cir. 1973) (per curiam) (noting that federally owned utility corporation is an agency of the Government). And a municipally owned utility's "entire control and management of [its municipality's utility] system or systems" does not place it beyond the municipality's authority. Miss. Code Ann. § 21-27-17. For example, Mississippi municipalities may establish urban renewal agencies and fully vest certain powers in them. *See id.* § 43-35-31(a). Yet Mississippi law treats these entities as agencies of the municipalities that create them. *See Tackett*, 255 So. 2d at 905–06. So while CMU may enjoy a separate legal existence from Canton, the [3]

9

Indictment's allegations about CMU remain sufficient to show that it is an agency of Canton.[1]

Since the [3] Indictment alleges that Anderson was an agent of Canton, Count One states an offense against Warnock and Anderson. *See* [3] at 1–4.

### C. Grant and Gilkey's Connection to Canton's Business

Lastly, Warnock contests the [3] Indictment's sufficiency because it alleges that Grant and Gilkey—who were agents of Canton—agreed to take bribes regarding only CMU's business (but not Canton's business). *See* [174] at 6–8; § 666(a)(1)(B), (a)(2). This argument fails because it misreads the [3] Indictment. The [3] Indictment alleges an agreement to bribe Grant and Gilkey as Canton BOA members to "benefit contractors who would receive contracts *awarded by the City of Canton and the CMU*." [3] at 3 (emphasis added). And part of that agreement involved bribing Grant and Gilkey "for favorable treatment in matters concerning *the City of Canton* . . . ." *Id.* at 3–4 (emphasis added). Thus, the [3] Indictment sufficiently alleges that Grant and Gilkey were agents of Canton and took bribes in connection with Canton's business. *See id.* at 1–4; *United States v. Smith*, 804 F.3d 724, 728–29 (5th Cir. 2015) (affirming conviction of Canton alderman for violating Section 666(a)(1)(B) as an agent of Canton).

---

[1] *See also Agencies*, The City of Canton, Miss., https://cantonms.gov/government/agencies/ [https://perma.cc/GG4P-8J3R] (last visited June 25, 2025) (listing CMU as a city agency and implying it is a department of the city); *Thomas*, 847 F.3d at 201 n.3 (considering that a city's website had listed the city's traffic court as a city department). The Court may take judicial notice of information contained on government websites. *See Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 519 (5th Cir. 2015); *see also United States v. Evans*, 892 F.3d 692, 711 & n.1 (5th Cir. 2018) (taking judicial notice when considering an attack on the sufficiency of an indictment).

Again, the Court could stop there, but the record also clarifies the [3] Indictment's allegations. The Government has suggested that it may introduce evidence that "Grant and Gilkey, in exchange for the stream of benefits from . . . Warnock, voted to remove . . . Anderson from the CMU Board of Commissioners" at a Canton BOA meeting. Gov't's Mot. Limine [108] at 8. This evidence would show that Grant and Gilkey—as agents of Canton—took bribes in connection with Canton's business. *See* § 666(a)(1)(B). Since corruptly influencing Grant and Gilkey's conduct at Canton BOA meetings would violate Section 666, *see id.* § 666(a)(2), agreeing to do so would violate Section 371. *See Ocasio*, 578 U.S. at 287.[2] Thus, Count One states an offense against Warnock. *See* [3] at 1–4.

IV.   Conclusion

For the reasons stated above, the Court DENIES Warnock's [174] and Anderson's [180] Motions to Dismiss. In doing so, the Court has considered all the arguments raised. Those arguments not addressed would not have altered the Court's decision.

---

[2] Warnock misplaces his reliance on *United States v. Whitfield*, 590 F.3d 325 (5th Cir. 2009). *See* [191] at 6–8. There, a jury convicted two judges—both members of the Mississippi Administrative Office of Courts (AOC)—of conspiring to take bribes relating to their judicial decisions. *Whitfield*, 590 F.3d at 337, 339–42. The AOC received the requisite federal money to trigger Section 666, but the bribes had no relationship to the AOC's business. *Id.* at 344, 346. So the Fifth Circuit vacated the bribery-related convictions. *Id.* at 336. On the other hand, the [3] Indictment alleges that Grant and Gilkey—both Canton aldermen—agreed to take bribes in exchange for treating Warnock favorably in relation to Canton's business. [3] at 3–4. Unlike the bribes in *Whitfield*, the alleged bribery agreement here related to the business of the entity receiving federal money. *See id.*

11

SO ORDERED, this 3rd day of July, 2025.

                                                        s/ *Kristi H. Johnson*
                                            UNITED STATES DISTRICT JUDGE